| | | |
|---|---|---|
| **DISTRICT COURT OF THE VIRGIN ISLANDS** | | |
| **DIVISION OF ST. CROIX** | | |

Mitchell N. Nicholas,

               **Plaintiff,**                              **Civil No. 2013-75**

     **v.**

People of the Virgin Islands,

               **Defendant.**

_____

TO:     **Mitchell N. Nicholas,** *Pro Se*
              **#1207937**
              **Red Onion State Prison**
              **P.O. Box 1900**
              **Pound, VA 24279**

              **Su-Layne Walker, Esq., Assistant Attorney General**
              **Denise N. George, Esq., Acting Attorney General**
              **Pamela R. Tepper, Esq., Solicitor General**
              **34-38 Kronprindsens Gade**
              **GERS Building, 2nd Floor**
              **St. Thomas, U.S. Virgin Islands 00802**

### <u>REPORT AND RECOMMENDATION</u>

THIS MATTER is before the Court upon the Order (ECF No. 68) of Chief Judge Wilma A. Lewis in 3:13-cv-00075 referring prisoner Mitchell N. Nicholas's "Motion Pursuant to Fed R. Civ. P. Rule 60(b)(6), 28 U.S.C.A." (ECF No. 59) for a Report and Recommendation. For the reasons set forth below, the undersigned **RECOMMENDS** that the motion be **DENIED**. Further, it is **RECOMMENDED** that the District Court **DENY** Nicholas a Certificate of Appealability.

*Nicholas v. People of the Virgin Islands*
Civil No. 3:13-cv-00075
Report and Recommendation
Page 2

## I.    RELEVANT BACKGROUND

Nicholas challenges his 2007 conviction for first degree murder of Georgia Gottlieb and related charges in the Superior Court of the Virgin Islands.[1]

On July 29, 2005, Gottlieb—who was Nicholas's girlfriend and the mother of D.N., their then-minor son—failed to report to work. Throughout the day, however, her friends and relatives, including Gottlieb's niece, Charmaine Joseph, received telephone calls from Gottlieb's cell phone, with the caller always remaining silent. Later that day, as a result of Joseph contacting the 9-1-1 emergency operator, the Virgin Islands Police Department ("VIPD") discovered Gottlieb's body in her apartment with a single gunshot wound to the back of her head. D.N. was not in the apartment, and his whereabouts were unknown.

That same day, the Federal Bureau of Investigation ("FBI"), assisting at the request of the VIPD, obtained Gottlieb's cell phone records and advised the VIPD that a call had been made from her cell phone to the Bella Vista Hotel. VIPD visited the hotel that evening but could not confirm whether Nicholas was a guest of the hotel as no personnel were on duty.

The next morning, the VIPD, accompanied by FBI agents, returned to the hotel without a warrant and were advised by the front desk clerk that Nicholas and a minor boy had checked into the hotel the morning of July 29, 2005. The VIPD gained access to Nicholas's hotel room with the use of both a master key and a battering ram (because a chain had been latched across the door). In the room, the VIPD found a boy—later identified as D.N.—and

---

[1] Most of the factual recitation of events surrounding the underlying crimes can be found in *Nicholas v. People of the Virgin Islands*, 56 V.I. 718 (2013).

*Nicholas v. People of the Virgin Islands*
Civil No. 3:13-cv-00075
Report and Recommendation
Page 3

Nicholas, who was lying in bed with a gun in his hand. During a search of the room, the VIPD recovered Gottlieb's cell phone. Later, police discovered Gottlieb's vehicle parked in a high school parking lot.

At trial, the government introduced testimony regarding the phone calls, the discovery of Gottlieb's body and the search of Nicholas's hotel room. The government also introduced testimony from Joseph, Gottlieb's neighbors, and five of Gottlieb's friends. Finally, D.N. testified as a witness on behalf of the government. Nicholas did not present any evidence.

On October 4, 2007, the jury found Nicholas guilty of first-degree murder, unauthorized possession of a firearm during the commission of a crime of violence, assault in the first degree and unauthorized possession of ammunition. These charges were in violation of V.I. Code Ann. tit. 14, §§ 921, 922(a)(1), V.I. Code Ann. tit. 14, § 2253(a), V.I. Code Ann. tit. 14, § 295(1), and V.I. Code Ann. tit. 14, § 2256(a). *See* Judgment and Commitment ("the Judgment") (ECF No. 32-1 at 5-8).

On December 7, 2007, Nicholas filed a notice of appeal *pro se* with the Virgin Islands Supreme Court. On appeal, Nicholas argued that (1) the evidence was insufficient to sustain his convictions for first-degree murder and unlawful possession of ammunition; (2) the Superior Court erred in ruling exigent circumstances supported the warrantless search of Nicholas's person and his hotel room; (3) the Superior Court erred in permitting lay witness testimony concerning numerous issues, including their beliefs that Nicholas killed Gottlieb,

*Nicholas v. People of the Virgin Islands*
Civil No. 3:13-cv-00075
Report and Recommendation
Page 4

Gottlieb's fear of Nicholas, and Nicholas's behavior and personality; and (4) the statute criminalizing possession of a firearm, V.I. Code Ann. tit. 14, § 2253(a), was unconstitutional because it impermissibly restricted the Second Amendment's right to keep and bear arms. The Virgin Islands Supreme Court reversed Nicholas's conviction for unlawfully possessing ammunition but affirmed the Judgment in all other respects. *Nicholas v. People of the Virgin Islands*, 56 V.I. 718 (2012).

On June 18, 2012, Nicholas filed a petition for rehearing. (ECF No. 33-3). The Virgin Islands Supreme Court denied the petition on July 10, 2012. (ECF No. 33-4). Nicholas subsequently filed a petition for a writ of certiorari in the United States Court of Appeals for the Third Circuit.[2] He presented the following questions for review: (1) whether the Virgin Islands Supreme Court failed to subject the Virgin Islands gun licensing statute, V.I. Code Ann. tit. 23, § 454(3), to intermediate scrutiny when addressing Nicholas's "Second Amendment based challenge;" (2) whether V.I. Code Ann. tit. 23, § 454(3) is unconstitutional; and (3) whether Nicholas's conviction for first-degree murder is invalid as a matter of law due to the Virgin Islands Supreme Court's alleged misconstruction of the standard for proving prejudice in plain error challenges. On June 20, 2013, the Third Circuit denied certiorari review.

---

[2] At the time, pursuant to *Seafarers Int'l Union v. Gov't of the V.I.*, 767 F.3d 193, 202-04 (3d Cir. 2014), the Third Circuit retained certiorari jurisdiction over final decision of the Virgin Islands Supreme Court for all cases commenced in the Superior Court prior to December 28, 2012. Last year, the Third Circuit abrogated *Seafarers*, concluding that Congress terminated the Third Circuit's jurisdiction over all certiorari petitions from final decisions of the Virgin Islands Supreme Court that were filed after December 28, 2012, rather than over all suits initiated in the Superior Court on or after that date. *See Vooys v. Bentley*, 901 F.3d 172, 175 (3d Cir. Aug. 21, 2018), *cert. denied*, 139 S. Ct. 1600 (Apr. 22, 2019).

*Nicholas v. People of the Virgin Islands*
Civil No. 3:13-cv-00075
Report and Recommendation
Page 5

Nicholas then filed a petition pursuant to 28 U.S.C. § 2254 (the "2254 petition") in the

District Court on July 30, 2013, seeking habeas relief.  (ECF No. 1).  While that petition was

still pending, he filed a "Rule 60B Motion" on July 24, 2014.  (ECF No. 21).  That motion

reasserted the grounds alleged in his 2254 petition.  Specifically, Nicholas asked the Court to

vacate the Superior Court's judgment based on his allegations that the subpoenas used to

obtain cellular records in his case were invalid; the agents and police officers who arrested

and searched him lacked the authorization of a warrant; and the violation of his *Miranda*

rights.  On March 27, 2015, the District Court denied both the 2254 petition and the "Rule

60B Motion," the latter of which was characterized as a motion to vacate.  (ECF Nos. 53 and

55).  On April 9, 2015, Nicholas filed an appeal as to the denial of the 2254 petition.   On

October 20, 2015, the Third Circuit denied him a certificate of appealability.  (ECF No. 58).

Judge Vanaskie, writing for a three-judge panel consisting of himself and Judges Fisher and

Jordan, explained that:

> The application for a certificate of appealability is denied because Nicholas has
> not made a substantial showing of the denial of a constitutional right.  *See* 28
> U.S.C. § 2253(c)(2).  In relation to the rulings that his claims were non-
> cognizable, procedurally defaulted, or raised in an impermissible second or
> successive petition, Nicholas cannot show that jurists of reason would find it
> debatable whether the District Court was correct in its procedural ruling and
> whether the petition states a valid claim of the denial of a constitutional right.
> *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  For instance, Nicholas's Fourth
> Amendment claims are not cognizable in a federal habeas corpus petition.
> *Stone v. Powell*, 428 U.S. 465, 494 (1976).  He also failed to state a claim based
> on *Miranda v. Arizona*, 384 U.S. 436 (1966).  *See Dickerson v. United States*, 530
> U.S. 428, 435 (2000).  Otherwise, Nicholas cannot show that jurists of reason
> would debate the denial of his remaining claims.  *Miller-El v. Cockrell*, 537 U.S.
> 322, 338 (2003) (citing *Slack*, 529 U.S. at 484); *see also Strickland v.*

*Washington*, 466 U.S. 668, 687-89 (1984).  Additionally, jurists of reason would not debate the District Court's resolution of Nicholas's motion for an evidentiary hearing, *see Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010), and his motion for a transfer to another prison.

On April 18, 2019, Nicholas filed the "Motion Pursuant To Fed. R. Civ. P. Rule 60(b)(6), 28 U.S.C.A.".  This motion is difficult to read, but the undersigned can identify a few points that Nicholas is trying to make.  First, Nicholas appears to argue that the Superior Court lacked subject matter jurisdiction over him.  To this end, he writes that the Superior Court "issu[ed] the out-dated and unrelated federal grand jury subpoena used by the Federal Bureau of Investigation ("FBI") to falsely arrest petitioner without an arrest or search warrant for lack of probably cause under 18 U.S.C.A. § 3052 and did not announce their presence and purpose prior to illegally entering petitioner's hotel room under 18 U.S.C.A. § 3109 ("Master Key")."  Mot. at 2.  Second, Nicholas argues that he should be granted relief because Judge Gomez who denied his 2254 petition also denied his application of a certificate of appealability.  Mot. at 2-3.   Third, Nicholas asserts a claim for ineffective assistance of counsel.  Specifically, Nicholas writes that:

> The FBI special agent whose name appears on the faulty subpoena as the author, has never testified in any court proceedings as to the authenticity of the subpoena or the FBI jurisdiction to illegally arrest petitioner without a warrant, for lack of probable cause, which the Supreme Court of the Virgin Islands agreed (Order and Memo, pg. 18) but refused to address because petitioner's court-appointed counsel did not cite it, violating petitioner's due process and subjecting petitioner to this cruel and unusual punishment. Petitioner's court-appointed attorney was clearly ineffective, but as officers of the court, the judges has a duty to uphold the constitution and their oath of office (28 U.S.C. § 453) by vacating petitioner's wrongful convictions.

*Nicholas v. People of the Virgin Islands*
Civil No. 3:13-cv-00075
Report and Recommendation
Page 7

Mot. at 4-5. Nicholas's motion also makes random accusations of bias against Judges Miller and Gomez, though he offers no support for these accusations. *See generally* Mot. at 2-6.

In response, the government wrote that Nicholas's motion was untimely, because Rule 60(b) requires that a motion filed under that rule must be filed within a reasonable time after the filing of the entry of judgment, order, or the date of proceeding. More than three-and-a-half years—the government argues—is not a reasonable time. Opp'n. (ECF No. 62) at 1. The government also points out the factual inaccuracy asserted regarding the certificate of appealability. Contrary to Nicholas's assertion that Judge Gomez addressed both the merits of Nicholas's petition and Nicholas's application for a certificate of appealability, the government points out that it was, in fact, the Third Circuit that denied Nicholas a certificate of appealability. *Id.* at 2.

In reply, Nicholas asserts: (1) that claims of actual innocence, lack of subject matter jurisdiction, and fraud upon the court have no expiration date, (2) that there is no record of the FBI special agent authenticating the subpoenas and that an evidentiary hearing is required so that the agent can testify, (3) that the FBI never brought him before a magistrate judge to justify if probable cause existed to arrest him, and (4) that the Virgin Islands Supreme Court ruled that the police "lacked probable cause" but that the court did not formally address that issue. Reply Brief (ECF No. 63) at 1-2.

## II.    STATUTORY FRAMEWORK

*Nicholas v. People of the Virgin Islands*
Civil No. 3:13-cv-00075
Report and Recommendation
Page 8

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 586 U.S. 86, 91 (2011). A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a state prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973). As Nicholas's conviction became final after 1996, this case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

Section 2254(a) permits a federal court to entertain only those applications alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

A federal district court may not grant a Section 2254 petition unless a state prisoner has exhausted the remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1)(A); *see also Rose v. Lundy*, 455 U.S. 509, 515 (1982); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). A prisoner exhausts state remedies by presenting his federal constitutional claims to each level of the state court, including the state's highest court, either on direct appeal or in collateral post-conviction proceedings. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in

the State"); *Lambert*, 134 F.3d at 513 (collateral attack in state court is not required if the petitioner's claim has been considered on direct appeal); *Schandelmeier v. Cunningham*, 819 F.2d 52, 53 (3d Cir. 1986) (explaining a state prisoner must present all of his claims to a state's intermediate appellate court, as well as to its supreme court, before a district court may entertain a 2254 petition).

The petitioner bears the burden of establishing exhaustion of all available state remedies. *Parker v. Kelchner*, 429 F.3d 58, 62 (3d Cir. 2005). The exhaustion rule requires the petitioner to "fairly present" the "substance" of his federal claims to the state courts before bringing them in federal court. *Picard v. O'Connor*, 404 U.S. 270, 275, 278 (1971). "Reliance on the same constitutional provision is not sufficient; the legal theory and factual basis must also be the same." *Gilmore v. Ricci*, 2007 WL 3256706, at *7 (D.N.J. Nov. 2, 2007) (citing *Picard*, 404 U.S. at 275); *accord McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). If the petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust his claims. *Rose*, 455 U.S. at 515.

## III.    SECOND SUCCESSIVE HABEAS PETITION

Stylized as a "Motion Pursuant to Fed R. Civ. P. Rule 60(b)(6), 28 U.S.C.A.," Nicholas asserts that he is filing the motion pursuant to Fed. R. Civ. P. 60(b)(6), 28 U.S.C. § 2253(c)(1), 28 U.S.C. § 2254, the First, Second, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and *Buck v. Davis*, 137 S. Ct. 759 (2017). The undersigned

*Nicholas v. People of the Virgin Islands*
Civil No. 3:13-cv-00075
Report and Recommendation
Page 10

will treat the motion as a Rule 60(b)(6) motion, as Nicholas more or less seeks the same relief

through the other legal vehicles under which he purports to bring this motion.

Rule 60(b)(6) provides grounds for relief from a "final judgment, order, or proceeding

for …. any other reason [not enumerated] that justifies relief." Fed. R. Civ. P. 60(b)(6). Rule

60(b)(6) is "intended to be a means for accomplishing justice in extraordinary situations …

and may be granted only upon a showing of exceptional circumstances." *United States v.*

*Mote*, 3:14cv1717, 2018 WL 2766656, at *1 (M.D. Pa. June 8, 2018) (internal citations and

quotations omitted). "[L]egal error without more does not justify the granting of relief under

Rule 60(b)(6)." *Stokes v. DA of the Cty. Of Phila.*, No. 98-5182, 2013 WL 331338, at *2 (E.D.

Pa. Jan. 29, 2013) (internal quotation marks and citation omitted). Further, "[a] court need

not provide a remedy under Rule 60(b)(6) for claims of dubious merit that only weakly

establish ineffective assistance by trial or post-conviction counsel." *Cox v. Horn*, 757 F.3d

113, 124-125 (3d Cir. 2014). Moreover,

> A Rule 60(b)(6) motion is deemed a petition for writ of habeas corpus under
> [28 U.S.C. Section] 2254 if the motion asserts "a federal basis for relief from a
> state court's judgment of conviction." [*Gonzalez v. Crosby*, 545 U.S. 524, 530
> (2005)]. A Rule 60(b) motion that "seeks to add a new ground for relief" or
> "attacks the federal court's previous resolution of a claim on the merits" is
> deemed a petition for writ of habeas corpus. *Id.* at 532. "[W]hen the Rule 60(b)
> motion seeks to collaterally attack the petitioner's underlying conviction, the
> motion should be treated as a successive habeas petition." *Pridgen v. Shannon*,
> 380 F.3d 721, 727 (3d Cir. 2004). There is a narrow exception for a Rule 60(b)
> motion asserting a previous ruling precluding a merits determination was in
> error (for example, a denial for such reason as a statute-of-limitations bar).
> *Gonzalez*, 545 U.S. at 532 n.4. A Rule 60(b) motion is not, in effect, a habeas
> petition if the motion attacks a ruling on a non-merits basis. *Id.*

*Brewington v. Klopotoski*, Civil Action 09-3133, 2012 WL 1071145, at *3 (E.D. Pa. March 29, 2012).

Although Nicholas devotes most of his motion to the applicability of Rule 60(b)(6), he cursorily mentions the various other avenues of relief he seeks. However, he fails to expound upon them, and it seems that he is referring to the same circumstances that form the basis for his Rule 60(b)(6) argument. All of his arguments should fail for the simple reason that they are an attempt to gain relief via a successive habeas petition. His request for relief under Rule 60(b)(6) fails to meet the narrowly-tailored exception that would remove the motion from the purview of second/successive habeas status; namely, a claim that the previous ruling erroneously precluded a merits determination. From the 2015 rulings, it appears that Judge Gomez assessed all of the claims that were raised on the merits. As such, the undersigned concludes that Nicholas has not sufficiently alleged circumstances so exceptional that the Court's "overriding interest in the finality of judgments" may be overcome. *Project Mgmt. Inst., Inc. v. Ireland*, 144 F. App'x 935, 938 (3d Cir. 2005) (citing *Mayberry v. Maroney*, 529 F.2d 332, 337 (3d Cir. 1976)).

The undersigned should point out that Nicholas's allegations of judicial bias—had they been substantiated or discussed at any length—might have been the kind of claims necessary to meet the exception to filing a successive habeas petition. After all, due process requires that trials be conducted free of actual bias as well as the appearance of bias. *See In re Murchison*, 349 U.S. 133, 136 (1955). But Nicholas's claims to this end are hardly

discussed, much less supported in the record.  As to claims of bias against Judge Miller, Nicholas simply states "[p]etitioner need not go into details as to Judge Miller's bias and prejudice towards petitioner, as the record already reflects so.  Although it is worth mentioning that Judge Miller cited that because petitioner was suspected of making a telephone call and checking into a hotel room under his legal name as probable cause for petitioner's arrest." Mot. at 5.  As to claims of bias against Judge Gomez, Nicholas writes only that Judge Gomez denied him a certificate of appealability "in grave error" and that Nicholas subsequently filed a judicial complaint alleging that Judge Gomez committed misconduct. Mot. at 6.

There is a strong presumption that a judge is not biased or prejudiced.  *Bracy v. Gramley*, 520 U.S. 899, 909 (1997).  The undersigned finds nothing in Judge Miller's Report and Recommendation or in Judge Gomez's orders indicating bias towards Nicholas.  On the contrary, review of the record demonstrates that Judge Miller and Judge Gomez provided detailed analyses of Nicholas's arguments, which were supported by relevant portions of the record.  It appears to the undersigned that Nicholas's allegations of bias are limited to mere disagreements with the prior rulings of the District Court and the Court of Appeals.  As the Third Circuit has recognized, however, judicial rulings alone almost never constitute a valid basis for demonstrating bias, *see, e.g., Harriott v. City of Wilkes Barre*, 640 F. App'x 191, 194 (3d Cir. 2016) (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)), and Nicholas has not provided additional allegations from which the undersigned could find bias.  Accordingly,

*Nicholas v. People of the Virgin Islands*
Civil No. 3:13-cv-00075
Report and Recommendation
Page 13

the undersigned does not find judicial bias to be a basis on which Nicholas could proceed

with a second successive habeas petition.

## IV.    EFFECT OF *BUCK V. DAVIS* ON NICHOLAS'S MOTION

Though inartfully stated by Nicholas, the undersigned will infer that Nicholas is

attempting to argue that the District Court lacked subject matter jurisdiction to adjudicate

his 2254 petition.  Mot. at 2-3.  To this end, Nicholas cites *Buck v. Davis*, 137 S.Ct. 759 (2017)

for the proposition that at the appeals stage:

> [T]he only question is whether the applicant has shown that jurists of reason
> could disagree with the district court's resolution of his constitutional claims
> or that jurists could conclude the issues presented are adequate to deserve
> encouragement to proceed further...When a court of appeals sidesteps the
> COA process by first deciding the merits of an appeal, and then justifying its
> denial of a COA based on its adjudication of the actual merits, it is in essence
> deciding an appeal without jurisdiction.

Mot. at 3 (quoting *Buck*, 137 S. Ct. at 773 (2017) (internal citations omitted)).

While Nicholas accurately states one of the rules that emerged from *Buck*, he

misunderstands its application—at least to his case.  Presumably this portion of his motion

is brought pursuant to Fed. R. Civ. P. 60(b)(1), under which Nicholas is contending that the

District Court's prior orders must be vacated because the Court made a "mistake."  Fed. R.

Civ. P. 60(b)(1).  First, to the extent that Nicholas is requesting that the District Court

vacate its decision not to issue a certificate of appealability relative to its prior orders,

Nicholas misstates the facts.  It was the Third Circuit—not Judge Gomez—who denied the

certificate of appealability.  Therefore, the District Court's decision as to whether to issue a

*Nicholas v. People of the Virgin Islands*
Civil No. 3:13-cv-00075
Report and Recommendation
Page 14

certificate of appealability is moot. The Tenth Circuit was faced with a similar predicament

in a 2006, which although prior to *Buck*, nonetheless illustrates this point:

> [Prisoner's] attack on the district court's denial of COA was mooted by our
> denial of COA on the same claims and our dismissal of his prior appeal. A
> controversy becomes moot when a court can no longer grant any effective
> relief. *Osborn v. Durant Bank & Trust Co. (In re Osborn*), 24 F.3d 1199, 1203
> (10th Cir. 1994). The COA statute permits a petitioner to address his
> arguments in favor of a COA to the court of appeals, irrespective of a denial in
> the district court. 28 U.S.C. § 2253(c). [Prisoner] did so, this court
> considered his arguments, and it denied COA and dismissed his appeal. This
> denial and dismissal divested the district court of any power to grant further,
> effective relief in the form of granting him a COA as to the issues he
> previously appealed and lost on. The district court should therefore have
> dismissed this Rule 60(b) claim as moot.

*Woodberry v. Bruce*, 204 Fed.Appx. 186, 189 (10th Cir. 2006). *See also Whittaker v.

Capello*, 2016 WL 9023010, at *1 (E.D. Mich. Dec. 7, 2016) (same) (citing *Woodberry*,

*supra*.). What the District Court might have done had it made an explicit

determination on the certificate of appealability is now irrelevant, given the Third

Circuit's decision.

Furthermore, *Buck* is only applicable to a court of appeals' analysis of

whether to issue a certificate of appealability. As explained in *U.S. v. Cook*, 2017 WL

2872369, at 2-3 (E.D. Ky. July 5, 2017):

> In *Buck, id.*, the Supreme Court clarified that appellate courts should use in
> addressing requests for issuance of certificates of appealability. It concluded
> that the Fifth Circuit should not have first decided the merits when
> considering an application for a certificate of appealability. Instead,
> appellate courts must initially resolve whether the matter presents an issue
> that is fairly debatable among reasonable jurists, thus initially satisfying the
> court's jurisdictional requirement.

> Until the prisoner secures a COA, the *Court of Appeals* may not
> rule on the merits of his case. *Miller-El v. Cockrell*, 537 U.S. 322,
> 336 (2003)... The COA inquiry, we have emphasized, is not
> coextensive with a merits analysis. At the COA stage, the only
> question is whether the applicant has shown that "jurists of
> reason could disagree with the district court's resolution of his
> constitutional claims or that jurists could conclude the issues
> presented are adequate to deserve encouragement to proceed
> further..."When a *court of appeals* sidesteps [the COA] process
> by first deciding the merits of an appeal, and then justifying its
> denial of a COA based on its adjudication of the actual merits, it
> is in essence deciding an appeal without jurisdiction. *Id.* at
> 336-37.

*Buck*, *supra*, at 773 (Emphasis added). Additionally, though Judge Gomez did not explicitly

rule on whether to grant a certificate of appealability, it could be implied that he did so by

adopting Judge Miller's Report and Recommendation in which she herself recommended

such a denial. *See* Report and Recommendation (ECF No. 49), at 19 n.28. The undersigned

also notes that Judge Gomez dismissed Nicholas's 2254 petition for failing to meet

exhaustion requirements "in addition to other deficiencies" (See ECF No. 53, at 3), and the

Court of Appeals appears to have based its denial of a certificate of appealability, at least in

part, on those grounds. As such, *Buck* is of no help to Nicholas.

## V.    TIMELINESS

Even if Nicholas could show that he is an entitled to an exception to the rule barring

a second successive habeas petition, his motion would still be untimely. Rule 60(b)(c)(1)

states that a motion for relief under Rule 60(b)(6) "must be made within a reasonable time."

Fed. R. Civ. P. 60(b)(c)(1). As set forth above, Judge Gomez denied both of Nicholas's

*Nicholas v. People of the Virgin Islands*
Civil No. 3:13-cv-00075
Report and Recommendation
Page 16

previous motions on March 27, 2015, the Third Circuit denied Nicholas a certificate of appealability on October 20, 2015, and, it was not until April 18, 2019 that Nicholas filed the immediate motion. It is well-settled that this period of time is simply too lengthy to be deemed "reasonable." *See Walsh v. Krantz*, 423 F. App'x 177, 180 (3d Cir. 2011) (affirming finding that period of two years was not "reasonable time" for 60(b) purposes); *Moolenaar v. Government of Virgin Islands*, 822 F.2d 1342, 1348 (3d Cir. 1987) (affirming finding that Rule 60(b)(6) motion filed nearly two years after judgment was untimely, particularly when "the reason for the attack upon that judgment was available for attack upon the original judgment."); *Milner v. Communication Workers, Local 13000*, Civil Action No. 90-7067, 1994 WL 52845, at *1 (E.D. Pa. Feb. 23, 1994) (finding Plaintiff's Rule 60 Motion filed twenty-one (21) months after judgment to be untimely, particularly because "[n]othing has changed since the judgment was entered."). Just as in *Moolenaar* and *Milner*, nothing here has changed since the District Court entered judgment more than four years ago. As such, the undersigned recommends that the District Court find that Nicholas has presented no extraordinary circumstances or equitable considerations that would excuse his untimely motion.

## VI.    INEFFECTIVE ASSISTANCE OF COUNSEL

Nicholas argues that he received ineffective assistance of counsel because his court-appointed attorney failed to challenge what Nicholas alleges was a faulty subpoena used to procure his arrest. Mot. at 4-5.

*Nicholas v. People of the Virgin Islands*
Civil No. 3:13-cv-00075
Report and Recommendation
Page 17

To prevail on an ineffective assistance of counsel claim, Nicholas must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 558 (1984). As for the "deficient" prong, a movant must show that counsel "made errors so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* As for the prejudice prong, a movant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.[3]

The movant bears the burden of establishing his ineffective assistance of counsel claims by a preponderance of the evidence. *United States v. Serrano*, 798 F. Supp. 2d 634, 631 (E.D. Pa. July 18, 2011) (citing *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)). A movant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's performance is highly deferential, and a petitioner must overcome a "strong presumption" that counsel's strategy and tactics "fall[ ] within the wide range of reasonable professional assistance." *Id.* at 689. In addition, "[a]n error by counsel, even if professionally

---

[3] A court may dispose of a claim at either prong, as there is no required order to the *Strickland* inquiry. *See Strickland*, 466 U.S. at 697 (explaining that a court need not "determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" or "address both components of the inquiry if the defendant makes an insufficient showing on one").

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment … Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 691-92.  Thus, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

Nicholas has attempted this line of argument before—not only in the District Court—but in the territorial court system as well.  He effectively argues that the trial court erred in denying his motion to suppress with respect to the warrantless search of his person and hotel room.  However, when Nicholas made this argument in front of the Virgin Islands Supreme Court, he claimed only that exigent circumstances did not exist.  *Nicholas*, 56 V.I. at 737; *see United States v. Coles*, 437 F.3d 361, 365 (3d Cir. 2006) ("Warrantless searches and seizures inside someone's home (or in this case, a hotel room) are presumptively unreasonable unless the occupants consent or probable cause and exigent circumstances exist to justify the intrusion").  As Nicholas did not contest the existence of probable cause, the Virgin Islands Supreme Court "limited [its] analysis solely to application of the exigent circumstances exception." *Nicholas*, 56 V.I. at 737.

Even if Nicholas's counsel had argued that there was a lack of probable cause, the record reflects that probable cause still would have supported Nicholas's arrest.  Thus, any challenge that his counsel could have made regarding the subpoena—either at trial or on appeal—would have been fruitless.

*Nicholas v. People of the Virgin Islands*
Civil No. 3:13-cv-00075
Report and Recommendation
Page 19

A warrantless arrest is lawful if based on probable cause. *Wright v. City of Philadelphia*, 409 F.3d 595, 601 (3d Cir. 2005). Officers have probable cause for an arrest if "at the moment the arrest was made … the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Here, Nicholas's arrest was based on probable cause and thus lawful. His arrest occurred after (1) the VIPD learned that a call had been made from Gottlieb's cell phone to the hotel and (2) the hotel's front desk clerk informed the VIPD that Nicholas had checked in with a minor. Coupled with other evidence collected following the discovery that Gottlieb had been killed, officers had probable cause for the arrest. Because the police had probable cause to arrest Nicholas without a warrant, Nicholas's trial counsel had no basis for seeking the suppression of any evidence or statements which were the product of Nicholas's arrest. *See United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011) ("Counsel cannot be ineffective for failing to raise meritless claims.").

To the extent that Nicholas argues that the police did not have probable cause for the evidence they seized in entering his hotel room, this argument fares no better. Warrantless searches of a suspect's person conducted during a lawful arrest are constitutional. *See Chimel v. California*, 395 U.S. 752, 762 (1969) ("[I]t is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its

concealment or destruction."); *United States v. Davis*, 726 F.3d 434, 439 (3d Cir. 2013) ("The general rule is that a search or seizure is unreasonable *if* the police lack either probable cause or a warrant.") (Emphasis added).  Because the police had probable cause for the warrantless arrest of Nicholas, the evidence seized as a consequence of that arrest—a firearm and Gottlieb's cell phone—were admissible, because they were concomitant with a lawful arrest. Furthermore, both items were properly seized under the "plain view" doctrine.  *See Nicholas*, 56 V.I. at 740 n.12 (noting "none of the evidence against Nicholas was obtained as a result of a search of his person incident to his arrest, since Nicholas was holding the firearm in his hand at the time the police entered [his hotel room] and … Gottlieb's cell phone [] was not found on Nicholas, but in plain view in the hotel room") (alterations added).  Accordingly, as there was no foundation to support a motion to suppress the firearm or Gottlieb's cell phone, Nicholas's trial counsel had no basis for seeking the suppression of this evidence.

Trial counsel also was not ineffective for failing to move to suppress the cell phone records obtained through what Nicholas alleges was an "outdated" subpoena.  Nicholas bears the burden of proving that he has a legitimate expectation of privacy in an object such that he can claim the protection of the Fourth Amendment in challenging the government's search of that object.  *See Rawlings v. Kentucky*, 448 U.S. 98, 104-05 (1980).  Here, the evidence showed that the cell phone in question belonged to Gottlieb—not Nicholas.  An individual has no legitimate expectation of privacy regarding the numbers she dials on her phone.  *See Smith v. Maryland*¸442 U.S. 735, 744 (1979) ("When he used his phone, [the

defendant] voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equipment in the ordinary course of business.  In so doing, [he] assumed the risk that the company would reveal to police the numbers he dialed.").  If Gottlieb would have no privacy interest in the numbers she dialed on her cell phone, the logical extension is that Nicholas had no privacy right in the numbers he dialed on Gottlieb's cell phone.  Accordingly, Nicholas was not prejudiced by trial counsel's alleged failure to seek suppression of Gottlieb's cell phone records.

As such, the undersigned finds that Nicholas fails to establish that his attorney's performance prejudiced Nicholas.[4]

## VII.    ACTUAL INNOCENCE

A claim of "actual innocence" relates to innocence in fact, not innocence based on a legal, procedural defect.  A litigant must present evidence of innocence so compelling that it undermines a court's confidence in the trial's outcome of conviction, thus permitting him to argue the merits of his claim.  A claim of actual innocence requires a petitioner to show: (a) new reliable evidence not available for presentation at the time of the challenged trial; and (b) that it is more likely than not that no reasonable juror would have convicted the petitioner in light of the new evidence.  *See House v. Bell*, 547 U.S 518 (2006); *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995).  Furthermore, the *House* Court emphasized that the gateway

---

[4] Additionally, Nicholas's claims for ineffective assistance of counsel were never presented on direct appeal.  Hence, these claims are also unexhausted.  *See Lambert*, 387 F.3d at 233-34.

standard for habeas review in claims asserting actual innocence is extremely demanding and permits review only in the "extraordinary" case.  *House*, 547 U.S. at 536-37 (citing *Schlup*, 513 U.S. at 327).

In this case, Nicholas has not presented any evidence that undermines his conviction. His claim of "actual innocence" is not based on any new evidence suggesting "innocence in fact."  Rather, Nicholas uses the "actual innocence" terminology without pointing to any specific articulable facts that would justify invocation of the doctrine.  Absent demonstration of new reliable evidence of his factual innocence, he cannot show that it is more likely than not that no reasonable juror would have convicted him.  *See House*, 547 U.S. at 537 (2006); *Schlup*, 513 U.S. at 327 (1995).  Furthermore, Nicholas has failed to demonstrate circumstances that would render Section 2254 an inadequate or ineffective remedy; nor does he represent an intervening change in the laws that render non-criminal the crimes for which he was convicted.  Nicholas also fails to demonstrate any circumstances amounting to a "complete miscarriage of justice."  Consequently, the undersigned recommends that Nicholas is not entitled to relief on his "actual innocence" claim.

## VIII.    CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right."  A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district

*Nicholas v. People of the Virgin Islands*
Civil No. 3:13-cv-00075
Report and Recommendation
Page 23

court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The undersigned finds that the habeas petition is inadequate to deserve encouragement to proceed further. The undersigned recommends that the District Court deny a certificate of appealability, as it is unlikely that jurists of reason would disagree with the undersigned's recommendation that Nicholas has failed to make a substantial showing of the denial of a constitutional right.

## IX.    CONCLUSION

Based upon the foregoing, **IT IS HEREBY RECOMMENDED** that Mitchell N. Nicholas's "Motion Pursuant to Fed R. Civ. P. Rule 60(b)(6), 28 U.S.C.A." (ECF No. 59) be **DENIED.** Further, it is **RECOMMENDED** that the District Court **DENY** Nicholas a Certificate of Appealability.

Any objections to this Report and Recommendation must be filed in writing within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. *See* 28 U.S.C. § 636(b)(1); LRCi 72.3

ENTER:

Dated: September 5, 2019                   /s/ George W. Cannon, Jr.
                                          GEORGE W. CANNON, JR.
                                          MAGISTRATE JUDGE